*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. SKAGGS, Minor.

UNPUBLISHED
October 22, 2019

Nos. 347450; 347451
Gladwin Circuit Court
Family Division
LC No. 18-000014-NA

Before: STEPHENS, P.J., and SERVITTO and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother and respondent-father appeal as of right an order terminating their parental rights to a minor child, MS, under MCL 712A.19b(3)(c)(*i*) (failure to rectify the conditions leading to adjudication), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm to the child if returned to the parent). We affirm.

## I. BACKGROUND

Child-protective proceedings were previously initiated against respondents in connection with another child, AS. After roughly a year of services, they voluntarily released their parental rights to AS. Shortly thereafter, MS was born. Petitioner, the Department of Health and Human Services (DHHS) removed MS from respondents' care a day after MS's birth. Petitioner cited, among other concerns, respondents' history with AS, marijuana use by respondent-mother during her pregnancy, and unsafe home conditions. Respondents were once again offered services for nearly a year, but did not adequately comply with their case-service plan or show benefit from services. Therefore, the trial court terminated their parental rights to MS.

## II. STANDARD OF REVIEW

To terminate parental rights, the trial court must initially find, by clear and convincing evidence, a statutory ground for termination, MCL 712A.19b(3), and this Court reviews for clear error the trial court's factual findings and its ultimate determination that a statutory ground has been established. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if, even if some evidence supports it, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *Id*. We also review for clear error a trial court's decision regarding the child's best interests. *In re Olive/Metts*, 297 Mich App

-1-

35, 40; 823 NW2d 144 (2012). We review unpreserved issues for plain error affecting substantial rights, meaning an error must be plain and affect the outcome of the proceedings. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). A trial court's evidentiary decisions are reviewed for an abuse of discretion. *Id*. at 15.

### III. GROUNDS FOR TERMINATION

MCL 712A.19b(3) states, in relevant part:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The conditions leading to adjudication, based on respondents' pleas to certain allegations in the amended petition for jurisdiction, consisted of marijuana abuse and unsafe housing. At the termination hearing, the foster-care worker, CS, reported that respondents had not completed any of their required counseling or drug-treatment programs and had consistently tested positive for marijuana. CS also reported that the conditions in respondents' home, when she visited it approximately three weeks before the hearing, were not appropriate for a child of MS's age because many small items, human food, animal food, and animal feces were on a dirty floor. Also, in respondents' room there was half of a smoked marijuana cigarette and "a couple bongs[.]" In light of this evidence, the trial court did not clearly err by finding that the conditions leading to adjudication continued to exist. MCL 712A.19b(3)(c)(*i*). The court rejected the defendants' explanation that a weekend house-sitter had caused the dirtiness in the house that was shown in photographs.[1] This Court "defer[s] to the special ability of the trial

---

[1] The court reviewed the photographs and aptly described the house as "deplorable" and "very, very dirty."

-2-

court to judge the credibility of witnesses." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

Respondent-mother implies that the pertinent conditions could have been "rectified within a reasonable time considering the child's age" and that the trial court therefore should not have terminated respondents' parental rights under subparagraph (c)(*i*). However, not only had respondents been offered services for almost a year in conjunction with MS's case, but they had also been offered services in connection with AS's case and showed little or no benefit from *those* services. After two years of services, respondents had still not achieved substantial and consistent change. On the basis of respondents' clear pattern of behavior, it was reasonable for the trial court to conclude that the pertinent conditions would not be rectified within a reasonable time considering MS's age.

The trial court also did not clearly err by finding that the ground for termination in subdivision (j) was established by clear and convincing evidence. Indeed, respondents' housing was unsafe, respondent-father[2] admitted to using marijuana "a lot more than . . . [he] should." Because respondent-father had a medical marijuana card, the trial court properly relied on the use of marijuana only to describe the conditions of the house and how the manner of respondent-father's use contributed to rendering the house unsuitable for a child. Respondent-father also admitted to having anger-management problems. Respondents did not complete any substance-abuse or counseling services, and their income was unverifiable and came solely from a variety of odd jobs. This evidence established a likelihood of harm to MS if he were to be returned to respondents' care. MCL 712A.19b(3)(j).[3]

## IV. BEST INTERESTS

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the [child's] best interests." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (quotation marks and citation omitted); see also MCL 712A.19b(5).

> To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider . . . the parent's compliance with his or her case service plan, the parent's visitation history with the child, the

---

[2] Respondent-father and respondent-mother were a committed couple. As such, if the child was returned to either respondent, the other respondent would be part of the household.

[3] Because petitioner established the grounds for termination in MCL 712A.19b(3)(c)(*i*) and (j), we decline to consider subdivision (g). See *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011) (only one statutory ground is needed for termination of parental rights).

children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

Respondents did not demonstrate an ability to properly care for MS and did not comply with their case-service plan, MS was doing well in foster care, and MS's foster parents were willing to adopt him. Therefore, the trial court did not clearly err by finding that it was in MS's best interests to terminate respondents' parental rights.

## V. OTHER ISSUES

Respondent-father contends that the trial court considered the issue of potential adoption too soon in the proceedings. At the termination hearing, petitioner's attorney asked CS whether MS was bonded to the foster parents and whether they were willing to adopt him. Respondent-father's attorney objected, stating, "I'm not sure why that would be relevant to anything[.]" The court overruled the objection, stating, "It goes as to best interest." Because the hearing was a combined hearing for statutory grounds *and* best interests, the trial court did not abuse its discretion by allowing the testimony about adoption.

Respondent-father contends that petitioner's efforts at reunification were insufficient. However, CS testified that respondents were offered help with "counseling, substance abuse, . . . housing, employment, [and] income." Respondent-father's attorney asked CS what she had done to "redouble [her] efforts" to get respondents to become better parents, in light of their lack of education. CS replied that she contacted respondents regularly and

[h]ad conversations with them about what they needed to do. Had conversations about, if they had done what we had talked about. Reminded them of doing it. Provided them contact information again, for service providers. Reminded them to contact . . . Infant Mental Health . . . To try to assist them in moving forward.

CS also said that she "advise[d respondents] that any time that they needed additional bus passes to let me know so that I could provide them and have them available[.]"

Accordingly, the record shows that DHHS did make reasonable efforts at family reunification. Respondent-father argues that respondents should have been offered more visits with MS. This argument is disingenuous, however, because CS testified that visits were offered "a couple times per week" for "an hour to hour and a half" and that respondents had recently *missed* eight visits. She testified that visitation during the "last reporting period" had been "pretty inconsistent" in general. Respondent-father cannot believably argue that additional visits should have been offered when he missed so many of the visits that *were* offered.[4] Respondent-father also states that DHHS should have provided a car seat for MS to be transported home from the hospital instead of faulting respondents for not having a car seat, but (1) he provides no

---

[4] During the termination hearing, respondent-father argued that respondents should have been allowed "home visits" with MS, but it was never demonstrated that the home was safe for such "home visits."

authority for the assertion that DHHS must provide needed infant supplies for new parents, see *People v Waclawski*, 286 Mich App 634, 679; 780 NW2d 321 (2009) (discussing an appellant's burden); and (2) the lack of a car seat was only one small aspect of the failure to provide adequate care. Respondent-father does not delineate any other steps that should have been taken by DHHS. An appellant may not leave it up to this Court to "discover and rationalize the basis for his claims[.]" *Id*. (quotation marks and citation omitted). In addition, respondent-father's disruptive behavior in the DHHS office was responsible for the termination of certain services that might have aided him. This issue is unpreserved, and respondent-father has not shown plain error affecting his substantial rights. *In re Utrera*, 281 Mich App at 8.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Amy Ronayne Krause